IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

DWIGHT ELVIN LEMASTERS,

Defendant.

CRIMINAL CASE NO.

1:07-CR-393-JEC-1

## ORDER

This case is before the Court to issue a written Order explaining the basis for its variance from the Sentencing Guidelines in the sentence imposed in the above case.

I.  **BACKGROUND**

The defendant, a 65-year old retiree, pled guilty to receipt of child pornography. The defendant had responded to an online advertisement, posted by an undercover postal agent, for the sale of videos of young schoolgirls engaging in sexually explicit conduct.[1] (Presentence Report ("PSR"), ¶7). Following email communications between the defendant and the undercover agent, the defendant ordered six videos and one CD containing visual depictions of sexually explicit conduct involving minor females and males from the ages of

---

[1] The ad was posted in a news group titled "Young sluts" and it offered "underground young schoolgirl hardcore vids 4sale/trade." (PSR, ¶ 7.)

nine to fourteen years in age.[2] (*Id.* at ¶8.)

While later arresting the defendant in his home, agents found two other computers that contained 191 image files and 30 video files of child pornography.[3] (PSR, ¶13.) These images were considered in calculating the defendant's relevant conduct. Further, the PSR indicates that one image found in defendant's home portrays a prepubescent female being vaginally penetrated by an adult male penis. (*Id.* at ¶13.)

Defendant was initially placed on home detention as a condition of his release upon his arrest. Some three months later, the defendant, fearful of the prison term that awaited him, fled to Mexico. He was apprehended three months later and has remained in custody since that time. (PSR, at p. 2.)

As to defendant's life prior to the criminal conduct at issue, the defendant earned a bachelor's degree from Southern Illinois University in 1966 and a mortuary science associates degree from that same institution in 1970. He ran a succession of small businesses,

---

[2] In one of his emails, the defendant indicated that he was not interested in receiving any depictions of rape or forced sex, but only consensual sex. (PSR, ¶ 21, Defendant's Objection.) Apparently, the undercover agent complied with that request.

[3] Initially, in his written objections to the PSR, the defendant indicated that he might challenge consideration of these images found on the computer as part of the calculation of his relevant conduct. (PSR, ¶13, Def.'s Objection.) Defendant withdrew that objection at the sentencing hearing.

2

and retired in 2006. According to his counsel, he has been living on social security benefits since that time.[4]

The defendant has been married once, from 1966-1980, and has three adult children. The defendant is close to his children, as well as his sisters. All of his children appeared in court in support of their father. His two sisters wrote letters citing their closeness to their brother and his involvement in community activities, such as the Rotary Club. (See letters attached to defendant's Sentencing Memorandum [34].)

Defendant had led what appeared to be a law-abiding life until his arrest on October 20, 2006 on the present charges. During the search of defendant's home at the time of his arrest, agents discovered controlled substances in his home. Subsequently, he was charged by state authorities with simple possession of these substances. Defendant pled guilty and was placed on probation.[5] The defendant indicated to the probation officer that he had used methamphetamine for approximately two years preceding his arrest, but had sought no professional treatment. (PSR, ¶ 48.)

---

[4] A transcript of the sentencing hearing has not been prepared. The Court is relying on its own memory of that hearing.

[5] That conviction earned him 2 criminal history points, which rendered his Criminal History level to be a Level II.

3

## II. SENTENCING GUIDELINES CALCULATION

Defendant's offense level, before Chapter 3 or 4 adjustments, was calculated to be a 33. That level was reached as follows:

| | |
|---|---|
| Base offense level | 22 |
| Reduction because defendant only received, and did not intend to distribute the pornography | -2 |
| Enhancement because the material involved prepubescent minors under the age of 12 | +2 |
| Enhancement because one image showed a prepubsecent female being vaginally penetrated by an adult male penis, thereby constituting a depiction of violence | +4 |
| Enhancement because of use of a computer | +2 |
| Enhancement because the defendant possessed more than 600 images | +5 |
| | 33 |

In addition, the PSR indicated an enhancement of the defendant's offense level by two-levels for obstruction of justice, as a result of his flight to Mexico, and there was no reduction for acceptance of responsibility.

The defendant objected to the enhancement for obstruction of justice and to the failure to award him 3 points for acceptance of responsibility, given his immediate confession to the offense when questioned by law-enforcement officers, his decision to file no

4

pretrial motions, and his plea of guilty prior to the setting of a trial date. This Court sustained the latter objection, but overruled the former, meaning that defendant's final offense level was a 32/Category II, with an advisory sentencing range of 135-168 months.[6]

The Court did not impose a sentence within this range, but instead imposed a five-year sentence, which sentence also comported with the mandatory-minimum sentence applicable to defendant's offense.

### III. GROUNDS FOR VARIANCE

Through his counsel, defendant submitted a thoughtful sentencing memorandum (hereinafter "SM" [34]) that urged the Court to ignore the child pornography guideline as flawed and unworthy of consideration. Further, regardless of the merits of this guideline, defendant urged the court to downwardly vary based on a consideration of the factors set out in 18 U.S.C. § 3553(a).

#### A.   Deference to be Paid to Child Pornography Guideline

1.   Defendant's Argument

Defendant relies on *Kimbrough v. United States*, 128 S.Ct.558 (2007), which adopted the criticism that has been directed at the powder/crack cocaine disparity in sentencing and which held that, in

---

[6] Had defendant not received a 2-level enhancement for obstruction of justice, his offense level would have been a 30, with a sentencing range of 108-135 months.

5

crack cocaine cases, a court's variance was not limited to § 3553 factors, but could also be grounded on the court's disagreement with the policy decisions that underpin the guidelines for crack cocaine. Defendant has argued that, like the crack cocaine guidelines, the child pornography guideline is fundamentally flawed and should not be given deference.

In making this argument, the defendant focuses on the fact that the present guideline for receipt or possession of child pornography owes much of its harshness to enhancements mandated by Congress. Defendant notes that Congress has frequently increased the penalties, over very short periods of time, with no explanation why the increase has been made. Specifically, defendant notes that had he been convicted between 1991-94, he would be facing 33-41 months (Offense Level 19/Criminal History Category II) under the Guidelines before consideration of acceptance of responsibility,[7] not the 151-188 range now applicable. According to defendant, the 1995 Guidelines Manual increased the penalty for the offense he committed, raising the final offense level to a 21, with a range of 41-51 months, before considering acceptance of responsibility. In 2003, the Guidelines

---

[7] The Court has not gone back to compare the calculations offered by defendant, but assumes that the defendant is calculating the guidelines before any reduction for acceptance of responsibility and as if no obstruction of justice enhancement were awarded. In any event, it is clear that the offense level and corresponding sentencing range for this offense have increased dramatically over the last fourteen years.

raised the offense level to a level 30, with a 108-135 month range. Only one year later, in 2004, the Guidelines again increased to a level 33, with a 151-188 month range, which is the present range before consideration of acceptance of responsibility. (SM at 5-8.)

Defendant notes that this "soaring" and rapid-fire increase in the guidelines has not resulted from any considered evaluation by the Sentencing Commission, but instead reflects "haphazard, political alterations" mandated by Congress. (SM at 8.) Indeed, defendant notes, the United States Sentencing Commission pushed back on some of these increased penalties mandated by Congress and indicated its view that the increased guidelines led, in some cases, to unduly severe punishment for the offense. (*Id.* at 8-11.) Nonetheless, Congress mandated these increases in the Guidelines and they now stand. In short, defendant argues that these ever-increasing penalties over a 10-year period of time were "not based upon empirical study or experience by the Sentencing Commission that would warrant an increase in an offense level." (*Id.* at 12.)

In addition, defendant argues that the guideline for possession/receipt of child pornography results in a sentencing range that is greatly disproportionate to other more serious offenses. That is, defendant, whose conduct consisted of nothing more than looking at the contraband in question--not manufacturing it or trafficking in it--faces an Offense Level 33, which is the same level

7

faced by an armed bank robber who discharged his weapon during the robbery, thereby causing serious bodily injury. (SM at 15.)

Defendant asserts that he faces a much harsher penalty than would a defendant who assaulted and injured a federal agent by discharging his firearm (Level 26). *Id.* Defendant faces only a slightly lower penalty for his offense than would a defendant who trafficked in just under 15 kilograms of cocaine, with a firearm (Level 34). (*Id.* at 16.) Finally, the Guidelines create only a modest enhancement for a defendant who actually sends child pornography over the internet (2-level enhancement)[8] versus a defendant, such as the defendant here, who merely possessed the materials. (*Id.*)

### 2. Discussion

Defendant has clearly made a thoughtful argument in support of his contention that the Court should not give deference to the child pornography guideline. As the Court has based its variance on factors set out in § 3553, it does not have to reach this question. Nonetheless, it is not at all clear that *Kimbrough* can be applied outside of the crack cocaine context to allow a court to disregard the child pornography guideline.

First, there are some distinctions between the flaws identified

---

[8] There is a minimum 5-level enhancement if the defendant distributes for pecuniary gain. USSG §2G2.2(b)(3)(A).

8

by the Supreme Court in the crack cocaine guideline and those alleged by defendant with regard to the child pornography guideline. With crack cocaine, there was a ready comparator for a proportionality analysis: powder cocaine. While there has been disagreement as to whether crack and powder cocaine should be treated equally for purposes of punishment, the Supreme Court determined that the large 100:1 ratio between the two substances had been roundly criticized in most quarters. See Kimbrough v. United States, 128 S.Ct. 558, 569 (2007) (discussing history of Sentencing Commission reports to Congress on the subject) There is no such readily available comparator for examining the severity level of child pornography offenses.

Further, defendant's argument that there has been no "empirical" support for each amendment of the child pornography guidelines does not persuade this Court. The "empirical data" used in developing the original Sentencing Guidelines consisted of a study of past sentencing practices that pre-dated promulgation of the Guidelines. Kimbrough, 128 S.Ct. at 567. The original Sentencing Commission endeavored to mimic this past practice for many offense types.[9] Since the promulgation of the guidelines, adjustments that deviate from past pre-Guidelines sentencing practices have frequently been made by

---

[9] It is the court's strong sense that, in the pre-Internet days of 1987, there would have been few child pornography prosecutions on which to base an inference as to past practice.

9

the Commission, however, with and without Congressional instigation, and with no serious contention that these adjustments were invalid because they lacked the "empirical" support supplied by past sentencing practices.

Moreover, other than through a study of past practices, the quest for empirical support for any particular sentencing range is necessarily futile because, outside of a guidelines context, the determination of a particular sentence in any case is an inherently arbitrary undertaking. Defendant argues that the sentencing ranges for possession of child pornography are unduly harsh. The Court suspects that, if put to a vote, the majority of participants in the federal sentencing system would agree with defendant that an 8-10[10] year sentence for a first offender whose criminal conduct consisted of only looking at child pornography--not manufacturing or trafficking in it--is disproportionate to the conduct involved. As to the sentence that those polled individuals would impose in the heartland case, the Court guesses that some participants would say that probation was the appropriate sentence; some would argue for a 1-year sentence; others for a 2-year sentence, and so forth. There would be no empirical support for any of these particular sentencing

---

[10] As noted *supra*, a defendant who engaged in the same conduct as defendant, who was a Criminal History Category I, and who received acceptance of responsibility, would be an offense level 30, with a sentencing range of 97-121 months.

choices, however. The key then is not a search for empirical support, but the exercise of sound judgment to arrive at a sentence that reasonable minds would conclude to be proportional to the offense and to adequately safeguard public safety.

Finally, the holding in *Kimbrough* that permits a district court to ignore the sentencing structure in that case appears to be limited to crack cocaine offenses. Likewise, in its most recent pronouncement on this matter, the Supreme Court continues to focus on the thin underpinnings for a 100:1 ratio between crack and powder cocaine offenses. *Spears v. United States*, ----S.Ct. ---- 2009 WL 129044 (January 21, 2009).

In short, defendant makes a reasonable argument that the present sentencing structure for the offense of possession of child pornography offenses creates sentencing ranges that are disproportionate when considered with the range set out for other offenses, and that, therefore, the resulting sentence is unduly harsh. The Court, however, remains unpersuaded that the present case authority gives it the power to make that judgment outside of the crack/cocaine powder context.

**B.   Section 3553 Factors**

1.   Goals of Sentencing, as set out in § 3553

Defendant urged a variance based on the nature and circumstances

of the offense.[11]  His attorney noted that defendant had neither produced nor distributed child pornography. Likewise, defendant had never chatted with any children or attempted any contact with them. Counsel states: "In the end, [the defendant] was a sad retirement-aged man viewing illegal images in the privacy of his own bedroom." (SM at 14.)  Counsel noted that, at the defendant's age, the 15-year sentence sought by the Government would be equivalent to a life sentence for a 65-year old man who had, prior to 2006, not run afoul of the law.  (*Id.* at 13.)

The Court agreed at sentencing that the nature and circumstances of the offense and the history and characteristics of the defendant warranted a variance.  In any case in which this Court considers a variance, it also attempts to consider the principles and concerns that underlie the particular guideline range from which it is varying. As noted by the Court at sentencing, this is a difficult undertaking in the child pornography context.

At the outset, one must note the obvious.  The production of child pornography is a heinous, reprehensible, unredeemable act.  In

---

[11]  Defendant also argued that his sentencing range was disproportionate to that of other more severe offenses.  See discussion *supra* at 7-8.  The Court does not view this contention as fitting within an analysis of § 3553 factors.  See 18 U.S.C. § 3553(a)(6) (in determining a particular sentence, a court shall consider the need to avoid unwarranted sentence disparities **among defendants** with similar records who have been **guilty of similar conduct**). (emphasis added)

12

order to produce the materials later disseminated, the producer has necessarily engaged in child molestation. He has physically preyed on a child in a way that will lead to deep and permanent psychological and perhaps even physical injuries.

Congress, of course, has made it a crime to manufacture child pornography. It has also made it a felony to possess materials depicting child molestation or showing children engaging in explicit sexual acts. It has done so presumably for two reasons. First, possession of these materials arguably creates a market for them that will encourage their continued production: that is, the continuing molestation of children. Second, every time a depiction is redistributed, this act celebrates the original exploitation, and, if the victim becomes aware of the distribution, whatever his or her age at the time of the redistribution, he or she will feel victimized again.

As to the first rationale, any possessor of contraband arguably aids in the creation of a market for that product.[12] Yet, a possessor

---

[12] Distribution of child pornography, however, is very different than distribution of other contraband, such as drugs. With the latter, there is almost always a financial incentive for the distributor. That is, the drug dealer does not provide drugs unless he is paid. Although in this case, the defendant did happen to order materials from an undercover agent and he sent money, defendant's conduct was not characteristic of the conduct present in most of the child pornography cases that this Court has sentenced. Rather, in most child pornography cases, no money changes hands. Instead, persons on the internet freely and enthusiastically exchange their

13

of contraband is sometimes treated much more leniently than the distributor of the contraband, notwithstanding the possessor's role in creating a market. For example, in drug cases, the guidelines for possession call for offense levels of 4-8, which gives rise to a probationary sentence, while the distributor of the drug can be sentenced to decades in prison, depending on the quantity of drugs he has distributed to users. *See* § 2D2.1. As noted *supra*, the possessor of child pornography in the heartland case, however, could be facing an 8-10 year sentence for a first offense.

One might then ask why the possessor of one type of contraband is treated so differently than the possessor of another. To try to answer that question, it is perhaps helpful to consider the traditional goals of sentencing in relation to the offense and the sentence prescribed. Those goals are general deterrence,[13] specific deterrence (removal of defendant from society),[14] punishment,[15] and rehabiliation[16]. As noted, the Guidelines call for an 8-10 year

---

own pornographic materials with each other, for no charge. Thus, the traffic in internet child pornography is not typically based on financial motivation.

[13] 18 U.S.C. § 3563(a)(2)(B).

[14] 18 U.S.C. § 3563(a)(2)(C).

[15] 18 U.S.C. § 3563(a)(2)(A).

[16] 18 U.S.C. § 3563(a)(2)(D).

14

sentence in the heartland case.[17]

Such a sentence for a first offender possessor of child pornography does not seem to be aimed at concerns about rehabilitation. In theory, a sentence of this magnitude offers general deterrence. Surely, a person at the ready to download child pornography on his computer might think better of that act if he knows that a lengthy prison sentence could result. Yet, the problem with a general deterrence theory is that it requires the potential offender to be aware of the likely penalty. In the Court's experience, most of the offenders before it appear genuinely shocked at the length of the sentences that they are facing for their choice of subject matter on the internet. The Court is uncertain why Congress, which has expressed a serious interest in stemming the rampant dissemination of child pornography on the internet, has not acted to insure that warnings of the possible penalties for this conduct be better communicated, at least on the internet, if not otherwise.[18] In any event, that the potential penalties have been so

---

[17] In the Court's experience, subsections (a)(2), (b)(2), (b)(4), (b)(6), and (b)(7)(B),(C), or (D), of USSG §2G2.2 often apply.

[18] The Court is also uncertain why, given the damaging and reprehensible nature of this material, Congress has not taken stronger action to pass laws that would stop its dissemination in real time, through legislation directed at internet providers, as opposed just to prosecution, after the fact, of a relatively few individuals who have looked at the materials.

15

poorly communicated to the public and that so few offenders seem aware of the lengthy sentences prescribed for their conduct suggests that general deterrence is not the primary goal behind the sentencing scheme for possession of child pornography.

As to punishment, the sentencing guideline for possession of child pornography is clearly punitive, but the Court is uncertain that punishment is the primary goal of this sentencing scheme, for the same reason that it is unpersuaded that general deterrence is the overriding aim: offenders generally seem unaware of the harsh penalties for this conduct until they are prosecuted.

The Court surmises that the last factor--specific deterrence--is the factor that has most prompted the present sentencing range for possession of child pornography. Specific deterrence looks to the removal of the offender in order to protect society from his future depredations. See 18 U.S.C. § 3563(a)(2)(C)(in determining the sentence to be imposed, the Court shall consider the need to protect the public from further crimes of the defendant). In short, an offender is specifically deterred when he is imprisoned because he cannot then harm other members of society during the term of his imprisonment.

It is not unreasonable to be concerned that a person who enjoys watching a depiction of a child being sexually molested might also be interested in, himself, directly molesting a child someday.

16

Indeed, it is difficult to fathom why any decent human being would entertain any desire to view these awful depictions. One can reasonably infer that the child pornography possessor may be sexually wired in a deviant fashion and that his proclivities, albeit unrevealed to the rest of the world, create significant concerns about his future danger.

Unfortunately, the research proffered to the Court at its many sentencing hearings for possession of child pornography has never definitively indicated a consensus as to what percentage of offenders are only lookers, as opposed to those who are actually, themselves, sexual predators or would-be sexual predators. The great unknown here is the extent to which collecting child pornography is a proxy for the likelihood of actually molesting a child. Nevertheless, in any consideration of a request for a variance in these offenses, the Court's uppermost concern is the likelihood of danger to children posed by the offender.

2. Application of § 3553 Factors to this Case

The Court imposed a 5-year sentence. As to rehabilitative goals, that sentence is lengthy enough to permit the defendant to take advantage of sex offender treatment programs in the prison system. Further, the Court has mandated the continuation of such programs when the defendant is on supervised release.

As to general deterrence goals, a sentence of 5 years for a 65-

year old first time offender should send a message to the public that possession of pornography carries a very harsh penalty.

As to punishment, the Court concludes that defendant will have been punished adequately through this sentence. He will be 70 years old when released from prison and will be on supervised release for the rest of his life, with many onerous conditions attached to that release.

Finally, as to the most worrisome concern--defendant's potential danger to society--the Court has also concluded that this sentence, as well as the conditions of supervised release, satisfy that goal. First, although defendant's taste for child pornography gives one real pause, there is no evidence or hint that he has ever molested a child. His three adult children love him and are close to him, and they indicated no awareness of this proclivity during their growing-up years. Further, the likelihood of defendant's success in acting on any deviant tendencies would appear to be somewhat diminished by his age at the time of his release.

Nevertheless, because defendant's underlying crime creates concern about his potential to harm a child, the Court is keeping the defendant on a very short leash once he is released. As noted, defendant will be on supervised release for the rest of his life. The Court has imposed a search condition on him and his property, allowing a probation officer to search at any time, with or without

suspicion.[19]  Defendant will be subject to supervision by the sex offender unit of this district's probation office and will not be allowed access to computers without the permission of his officer. He will be required to participate in all sex offender treatment programs and will be subject to regular polygraph exams. A failure to cooperate will result in him being sent back to prison.

Finally, for the first year of his supervised release, the defendant shall be on home confinement, with electronic monitoring. Any departures from his home will have to be approved in advance by his probation officer. The electronic monitoring will allow the officer to identify the defendant's location at any time.

The Court has attempted to address concerns about the defendant's future dangerousness as effectively as it can, while at the same time imposing what the Court believes to be a fair sentence that addresses the goals of sentencing and the defendant's particular circumstances. At bottom, the particular circumstance that has most influenced the Court is the age of the defendant and the impact that a longer sentence would have on him. Other circumstances include the fact that the forensic examinations of defendant's computer do not reveal the defendant to have had contact with a child nor did he

---

[19] By seeking and accepting this below-Guideline sentence, the Court considers defendant to have waived any right to challenge such a search based on an absence of suspicion, assuming any such challenge could be successfully mounted.

engage in the trading of child pornography. Finally, defendant has a supportive and loving family, whose encouragement and monitoring should help him to avoid any other violations of the law in the future.

**IV. CONCLUSION**

For the above reasons, the Court varied from the Guidelines in imposing its sentence in this case.

SO ORDERED this 29 day of January, 2009.

_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE